202 POINT EAST DRIVE
NASHVILLE, TENNESSEE 37216
Ph. 1888.598.0009
Efax: 615.216.4802
sisterinlawlegal@gmail.com



# Fax

| To: | Skipper Ray, Esquire | From: | Kathy A. Leslie, Attorney |
|---|---|---|---|
| **Fax:** | 501.734.4561 | **Pages:** | 43 |
| **Phone:** | | **Date:** | 9/4/13 |
| **Re:** | Davis v. JP Morgan Chase Bank, N.A. | **cc:** | |

☐ **Urgent**     ☐ **For Review**     ☐ **Please Comment**     ☐ **Please Reply**     ☐ **Please Recycle**

● **Comments:** The information contained in this facsimile is legally privileged and confidential information from Sister In Law Legal Firm. The information is intended ONLY for the use of the individual or entity above. If you are not the intended recipient, you are hereby notified that any disclosure, copying or distribution or the taking of any action in reliance on the content of this transmitted information is strictly prohibited and the documents should be returned to the Firm immediately. If you have received this correspondence in error, please call toll free 1.888.598.0009.

RE: Davidson County Chancery Court No. 13-1253-IV

Skip, here is a copy of the lawsuit. Thanks and if you have any questions, please do not hesitate to contact me.


Kathy

# Exhibit A

# COPY

| STATE OF TENNESSEE<br>20ᵀᴴ JUDICIAL DISTRICT<br>CHANCERY COURT | **SUMMONS** | CASE FILE NUMBER<br>13-1253-IV |
|---|---|---|
| PLAINTIFF<br><br>Samuel L. Davis | DEFENDANT<br><br>JP Morgan Chase Bank. N.A. | |

TO:    (NAME AND ADDRESS OF DEFENDANT)

Method of Service:

   JP Morgan Chase Bank, N.A.
Reg.Agt:CT Corp Systems
800 Gay Street, Ste. 2021
Knoxville, TN 37929-9710

- ☑ Certified Mail XXXX
- G  Davidson Co. Sheriff
- G  *Comm. Of Insurance
- G  *Secretary of State
- G  *Out of County Sheriff
- G  Private Process Server
- G  Other

List each defendant on a separate summons.          *Attach Required Fees

**YOU ARE SUMMONED TO DEFEND A CIVIL ACTION FILED AGAINST YOU IN CHANCERY COURT, DAVIDSON COUNTY, TENNESSEE. YOUR DEFENSE MUST BE MADE WITHIN THIRTY (30) DAYS FROM THE DATE THIS SUMMONS IS SERVED UPON YOU. YOU MUST FILE YOUR DEFENSE WITH THE CLERK OF THE COURT AND SEND A COPY TO THE PLAINTIFF'S ATTORNEY AT THE ADDRESS LISTED BELOW. IF YOU FAIL TO DEFEND THIS ACTION BY THE ABOVE DATE, JUDGMENT BY DEFAULT CAN BE RENDERED AGAINST YOU FOR THE RELIEF SOUGHT IN THE COMPLAINT.**

| Attorney for plaintiff or plaintiff if filing Pro Se:<br>(Name, address & telephone number)<br>Sister In Law Legal Firm<br>Kathy A. Leslie, Attorney<br>202 Point East Drive<br>Nashville, TN 37216<br>Ph. 1.888.598.0009<br>Efax: 615.216.4802 | FILED, ISSUED & ATTESTED<br><br>SEP - 4 2013<br><br>**CRISTI SCOTT, Clerk and Master**<br>By:          1 Public Square<br>               Suite 308<br>               Nashville, TN 37201<br><br>*Elaine Harper*<br>**Deputy Clerk & Master** |
|---|---|

## NOTICE OF DISPOSITION DATE

   The disposition date of this case is twelve months from date of filing.  The case must be resolved or set for trial by this date or it will be dismissed by the Court for failure to prosecute pursuant to T.R.C.P. 41.02 and Local Rule 18.

   If you think the case will require more than one year to resolve or set for trial, you must send a letter to the Clerk and Master at the earliest practicable date asking for an extension of the disposition date and stating your reasons. Extensions will be granted only when exceptional circumstances exist.

| TO THE SHERIFF: | DATE RECEIVED<br><br><br>**Sheriff** |
|---|---|

**\*Submit one original plus one copy for each defendant to be served.**

I HEREBY CERTIFY THAT THIS IS A TRUE COPY
OF ORIGINAL INSTRUMENT FILED IN MY OFFICE.
THIS ☒ 4ᵀᴴ DAY OF *September* 20 _13_     ADA Coordinator, Cristi Scott (862-5710)
CRISTI SCOTT, CLERK & MASTER
BY  *Elaine Harper*
          DEPUTY

## RETURN ON SERVICE OF SUMMONS

I hereby return this summons as follows:  (Name of Party Served) _____

☐  Served _____  ☐  Not Found _____
☐  Not Served _____  ☐  Other _____

DATE OF RETURN:                              By: _____

                                             Sheriff/or other authorized person to serve process

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the _____ day of _____, 20___, I sent, postage prepaid, by registered return

receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case _____ to

the defendant _____.  On the _____ day of _____, 20___, I received the return

receipt, which had been signed by _____ on the _____ day of _____, 20___.

The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.

| Sworn to and subscribed before me on this _____ day of _____, 20___.<br>Signature of _____ Notary Public or _____ Deputy Clerk<br><br>My Commission Expires: | Signature of plaintiff, plaintiff's attorney or other person authorized by statute to serve process. |
|---|---|

### NOTICE OF PERSONAL PROPERTY EXEMPTION

TO THE DEFENDANT(S):

    Tennessee law provides a ten thousand dollar ($10,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment.  If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court.  The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list.  Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books.  Should any of these items be seized you would have the right to recover them.  If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

    Mail list to:  Clerk & Master
                   1 Public Square
                   Suite 308
                   Nashville TN 37201

Please state file number on list.

ATTACH
RETURN
RECEIPT
HERE
(IF APPLICABLE)

## CERTIFICATION (IF APPLICABLE)

| I, Cristi Scott, Clerk & Master of the Chancery Court in the State of Tennessee, Davidson County, do certify this to be a true and correct copy of the original summons issued in this case. | CRISTI SCOTT, Clerk & Master<br><br>By: _____<br><br>_____ D.C. & M. |
|---|---|

FILED

2013 SEP -4  PM 2: 58

CLERK & MASTER
DAVIDSON CO. CHANCERY CT.

_____ D.C. & M

# IN THE CHANCERY COURT FOR DAVIDSON COUNTY, TENNESSEE

Samuel L. Davis                    )
   Plaintiff                         )
                           )
                           ) Case No. 13 - 1253 -Ⅳ
V.                                 ) Part_____
                           )
JP Morgan Chase Bank, N.A.          )
   Defendant

## COMPLAINT

    Comes now Samuel L. Davis, Plaintiff, by and through the undersigned and would state as his cause of action the following:

## PARTIES

1.   The Plaintiff is a resident and citizen of the City of Nashville, County of Davidson, State of Tennessee.

2.   Defendant JP Morgan Chase Bank ("JP") purports to hold the Promissory Note ("Note") on 1203 Second Avenue South, Nashville, Tennessee ("Property") and does business pursuant to the laws of the State of Tennessee with its registered agent for service being CT Corporation Systems, 800 Gay Street, Ste. 2021, Knoxville, TN 37929-9710.

3.   JP for all acts complained herein purports to hold the Promissory Note ("Note") to 1203 Second Avenue South, Nashville, Tennessee ("Property").

## JURISDICTION

4.   The causes of action complained of herein occurred in the City of Nashville, County of Davidson, State of Tennessee. All parties have sufficient ties to the City of Nashville, County of Davidson, State of Tennessee therefore invoking this Court's jurisdiction over the parties pursuant to T.C.A. §16-11-101 *et.seq.*

1

## VENUE

5.  All actions complained of herein occurred in the City of Nashville, County of Davidson and the State of Tennessee. Venue properly lies within this County.

## FACTS

6.  On September 23, 2007, the Plaintiff solely executed the Note on behalf of Franklin American Mortgage Company in the amount of one hundred and sixteen thousand seven hundred and twenty five dollars ($116,725) (exhibit 1). Pursuant to that Note, Mortgage Electronic Registrations Systems (MERS) was the nominee.

7.  Allegedly, JP purports that it was assigned the Note by MERS.

8.  Along with the Note, Plaintiff solely executed a Deed of Trust ("DT") (Exhibit 2) in the amount of one hundred and sixteen thousand seven hundred and twenty five dollars ($116,725).

9.  Franklin American Mortgage Company ("FA") was the lender and the loan was an FHA loan.

10. JP purports that it has foreclosed on 1203 Second Avenue South, Nashville, Tennessee. ("Property").

11. The Register of Deeds Office in Nashville, Tennessee is devoid of any such foreclosure and in particular as evidenced by there being no Trustee's Deed on file.

12. JP purports that it has foreclosed upon the Property; however, although JP has not given proper notices to Plaintiff as required by law.

13. JP purports that it has foreclosed on property located at 1203 2nd Avenue South, Nashville, Tennessee.

2

14. JP purports it holds a Note evidencing indebtedness on the Property; however, there is no property address known as 1203 2nd Avenue South, Nashville, Tennessee.

15. One thousand twelve and three 2nd Avenue South is a mailing address, not a property address.

16. Although, JP knowing no property address exists has through Unlawful Detainer Warrants issued on January 12, 2012 and January 14, 2013 respectively attempted to have Plaintiff and Williefia Gunn evicted from the property address of 1203 2nd Avenue South, Nashville, TN. Both Detainer Warrants were dismissed by the Defendant (collective exhibits 3).

17. Williefia Gunn has never owned the Property and has never executed a Note or DT relative to the Property.

18. Although JP knowing that it does not have authority to issue such Detainer Warrants has issued another Detainer Warrant on August 21, 2013 attempting to dispossess the Plaintiff via a Williefia Dunn from the Property and will not stop its unlawful efforts without being legally restrained from doing so.

19. The Plaintiff has not received any Notice of Default from the Defendant.

20. Plaintiff has not received notice from the Defendant that would entitle it to foreclose on the Property in that no such Property exists.

21. Even if the address of 1203 2nd Avenue South, Nashville, Tennessee exists, the Defendant did not give adequate notices as prescribed by law and the DT.

22. The address of the property is 215 Chestnut Street, Nashville, Tennessee.

23. At all times, the Defendant knew or should have known that the actual physical address of the property is 215 Chestnut Street, Nashville, Tennessee.

3

24. The loan regarding this property is an FHA loan. Plaintiff was induced into procuring such a loan even though the Defendant's knew or should have that the Property was not zoned to obtain such a loan.

25. As a proximate cause of the Defendant's actions, Plaintiff incurred debt in the amount of one hundred and sixteen seven hundred and twenty five dollars plus interest ($116,725).

26. Plaintiff began to fall behind on his mortgage payments and requested a loan modification.

27. Defendant through its agents and/or employees told the Plaintiff that that is working on a modification for the Plaintiff.

28. However, despite that representation, Defendant now purports that they have foreclosed upon the Property and have issued a Writ of Possession.

29. Defendant purports that it has foreclosed on the Property; however, the Register of Deed's Office is devoid of such foreclosure and particularly a Trustee's Deed.

30. JP also purports that it is the owner and holder of said Note through an assignment from MERS although Plaintiff does not have a record of such alleged assignment.

31. JP purports that it had the right to initiate foreclosure proceedings against the Plaintiff.

32. Defendant does not assert that it has the original note in its possession and as such does not have the right to foreclose on the Property.

33. Based upon information and belief Defendant allegedly foreclosed upon the Property without having authority to do so.

34. The Defendant has failed to produce evidence of the original note or a valid assignment.

35. JP has failed to produce assignment of rights to it.

4

## FIRST CAUSE OF ACTION
### I.
### QUIET TITLE AGAINST DEFENDANT JP MORGAN CHASE, N.A. AND ALL PERSONS CLAIMING TO HAVE EQUITABLE TITLE, ESTATE, LIEN OR INTEREST IN THE PROPERTY DESCRIBED HEREIN

36. Paragraphs 1-35 are incorporated herein as if set out verbatim.

37. Defendant cannot demonstrate that it is entitled to foreclose on the Property. Plaintiff seeks quiet title against the Defendant and anyone who claims title, equitable or otherwise, estate, lien or any other interest in the Property or property located at 215 Chestnut Street, Nashville, Tennessee.

38. Defendant has no right to title or interest in the 1203 Second Avenue North, Nashville, Tennessee or 215 Chestnut Street, Nashville, Tennessee.

39. Defendant has no right of ownership in the properties including the right to foreclose, offering the property for sale at a trustee's sale, demanding possession or filing unlawful detainer warrants.

40. Despite having no such authority, the Defendant allegedly foreclosed upon the Property and is seeking possession through and Unlawful Detainer Warrant.[1]

41. The original lender was Franklin American Mortgage Company which purported to sell, transfer, or assign its interest to JP through MERS.

42. JP is the party that alleges that it has acquired the interest to foreclose on the Property and has allegedly appointed MCC TN, LLC Substitute Trustee on April 24, 2012, but such appointment was effective retroactively to December 20, 2011 (Exhibit 4- Notice of Appointment of Substitute Trustee).

---

[1] Counsel for Wilson and Associates has agreed to hold in abeyance any attempts to take possession of the Property at this time pending resolution of this case. In the event that such position changes, Plaintiff will seek a restraining order.

5

43. The record is void of any Trustee's sale or Trustee's Deed. Even if such exists, the Defendant is not authorized to take possession of 1203 Second Avenue South, Nashville, Tennessee in that no such property address exists and further that it is not entitled to title or possession of 215 Chestnut Street, Nashville, Tennessee in that neither the Deed of Trust or Note assert title to 215 Chestnut Street, Nashville, Tennessee.

44. Plaintiff seeks to quiet title to the property known by defendant as 1203 Second Avenue South and 215 Chestnut Street, Nashville, Tennessee. Plaintiff seeks a judicial declaration that said properties be vested solely to Plaintiff and Defendant JP and its agents and assigns be declared to have no title, right, interest or estate in the above mention properties and that their agents and assigns be forever enjoined from asserting any estate, right, title or interest in the subject properties subject to Plaintiff's rights.

## II.

## VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT

45. Paragraphs 1-44 are incorporated herein as if set out verbatim.

46. Defendant's actions are in violation of the Tennessee Consumer Protection Act as codified in T.C. A §47-18-104 *et. seq.* in that their actions are unfair and deceptive in that they seek title and possession to a property that does not exist via the Deed of Trust and Note and cannot seek possession and title to 215 Chestnut Street, Nashville, Tennessee in that the Deed of Trust nor the Note claims possession and/or debt regarding 215 Chestnut Street, Nashville, Tennessee.

6

47. Defendant's actions are further unfair and deceptive in that it has not provided, although the Plaintiff has requested, any documentation that the loan has been foreclosed upon including, but not limited to, Trustee's Deed.

48. Defendant's actions are unfair and deceptive in that it has filed an Unlawful Detainer warrant against Williefia Dunn knowing that Ms. Dunn did not nor has ever owned either of the properties. Defendant's actions are unfair and deceptive in that it purports to have title even prior to foreclosing on the properties. Defendant's actions are unfair and deceptive in that it ratified a loan and took possession of a loan knowing that such loan and property does not and did not qualify for an FHA loan.

49. As such the Plaintiff is entitled to compensatory damages, treble damages and attorney fees.

### III.

### FRAUD AGAINST DEFENDANT

50. Paragraphs 1-49 are incorporated herein as if set out verbatim.

51. Plaintiff submits that the Defendant's actions constitute fraud in that they foreclosed upon a property which they knew or should have known was a mailing address known as 1203 Second Avenue South, Nashville, Tennessee.

52. Defendant's action constitute fraud in that on September 13, 2007, Franklin American Mortgage Company induced the Plaintiff to sign a Deed of Trust and Note regarding property located at 1203 Second Avenue South, Nashville, Tennessee knowing such property address did not exist and further knowing that said property contained a non-conforming commercial building. All of the property being known as 215 Chestnut Street, Nashville, Tennessee.

53. Plaintiff asserted to Franklin American Mortgage Company that 1203 second Avenue South was a mailing address and not the same as 215 Chestnut Street, Nashville, Tennessee.

7

Plaintiff was told by FA at the time of the loan that he was obtaining a loan on the house and not the non-conforming building on the property and as such would qualify for an FHA loan. Further, knowing that the property 215 Chestnut Street had a non- conforming use, FA induced the plaintiff to obtain an FHA loan and represented that the property qualified for such a loan with a commercial dwelling.

54. Defendant JP purchased or was otherwise took assignment of the loan knowing the Property did not exist and that 215 Chestnut Street did not qualify for an FHA loan.

55. After the Plaintiff needed a loan modification, he found out the property did not qualify for a FHA loan in that it contained a nonconforming use being the commercial building said address being 215 Chestnut Avenue, Nashville, Tennessee.

56. Plaintiff has subsequently found out that in that the property contains a nonconforming use, i.e. the commercial dwelling, it does not qualify for a FHA loan and does not qualify for a modification of the loan.

57. Defendant, JP as alleged assignee of the Note, knew or should have known that the property did not qualify for a loan modification through FHA and as such the fraud committed by FA. JP knowing that the property would not qualify for a loan modification represented to the Plaintiff that it did qualify. Plaintiff relied on the misrepresentation to his detriment.

58. Plaintiff relied upon the representation to his detriment in that he was lulled by JP in believing that a modification was being worked on; however, instead of working on the loan modification, the defendant JP foreclosed on the property.

59. Based upon information and belief, if the nonconforming use located on the property had been detailed, Plaintiff would not have obtained the loan and would not have been in the predicament of losing his home.

8

60. Further, Plaintiff relied on the misrepresentation and suffered damages, including, but not limited, loss of property, loss of equity and damage to credit.

## IV.

## *BREACH OF CONTRACT AND GOOD FAITH AND FAIR DEALING*

61. Paragraphs 1-60 are incorporated herein as if set out verbatim.

62. Defendant breached the Deed of Trust in that pursuant to ¶ 10 and ¶9 in that it has not provided reinstatement figures although requested to do so in writing. Plaintiff has the right to cure any alleged breach and to reinstate the loan prior to foreclosure. Plaintiff, although requested, had not been notified by Defendant as to the amount needed to bring the loan current even if the contract was breached.

63. The DT ¶10 states in pertinent part: Reinstatement: "Borrower has the right to be reinstated if Lender has required payment in full because of Borrower's failure to pay an amount due under the Note of this Security Instrument. This right applies even after foreclosure proceedings have been instituted".

64. Plaintiff did not have knowledge that the property was in foreclosure and was not given the Notice of Foreclosure or default and thus was not given the opportunity to cure any alleged default. Moreover, specifically the Plaintiff did not have notice that the property located at 215 Chestnut Street was subject to foreclosure.

65. Further, Defendant did not act in good faith and fair dealing when Defendant represented to the Plaintiff that they were working on a loan modification, knowing or should have known that the loan could not be modified through FHA.

9

## V.

## CONVERSION

66. Paragraphs 1-65 are incorporated herein as if set out verbatim.

67. The Defendant has converted the Property to its own use without having the authority or right to do so and has attempted to seek possession of 1203 Second Avenue South, Nashville, Tennessee.

68. Defendant purports to have foreclosed on the Property and in the event that such is the case, they have done so in contradiction of Tenn. Code Ann §35-5-117 which requires that the Plaintiff be given 60 days' notice of intent to foreclose.

69. In the event that the Property was foreclosed, Defendant did not conduct the foreclosure in a proper manner in that the Defendant violated §35-5-118 by not beginning the bid at the fair market value of the property.

## VI.

## *FRAUD AND INTENTIONAL MISREPRESENTATION BY DEFENDANT JP*

70. Paragraphs 1-69 are incorporated herein as if set out verbatim.

71. Defendant JP has acted in bad faith in the handling of the loan.

72. Defendant JP represented to the Plaintiff that it was working on the modification of the FHA loan.

73. However, Defendant JP knew or should have known that the loan could not be modified via an FHA loan in that the Property contained a non-conforming use (i.e. commercial building).

74. When the loan was allegedly assigned to JP, it knew or should have known that 1203 Second Avenue South, Nashville, Tennessee was not the property location rather than a mailing address.

10

75. Defendant committed fraud in collecting money based upon a loan that would not and did not meet the guidelines of FHA.

76. Defendant JP continued to dupe the Plaintiff in believing that they were working on a loan modification through FHA knowing that 1) 1203 is a mailing address, and 2) knowing or should have known that the property used by the Defendant did not qualify for a loan modification.

77. Defendant relied on the representations to his detriment in that he obtained a loan in the amount of one hundred and sixteen thousand seven hundred and twenty five dollars ($116,725) via an FHA mortgage.

78. FHA mortgages offer greater protection in the event of foreclosure.

79. Plaintiff relied on Defendant's representations to his detriment in that he cannot obtain a modification on such a loan.

80. Therefore, as a proximate cause of the Defendant JP's actions of fraud and misrepresentation, the Plaintiff has suffered damages including, but not limited to, indebtedness, loss of property, equity in property and damage to credit.

### VII.

### EQUITTABLE ESTOPPEL

81. Paragraphs 1-80 are incorporated herein as if set out verbatim.

82. Defendant via alleged assignment has a loan that based upon information and belief did not qualify for an FHA loan. Defendant via assignment knew or should have known this fact.

83. The Note was taken on a property mailing address of 1203 Second Avenue South, Nashville, Tennessee.

11

84. Defendant knew or should have known that such property address does not exist, but despite that knowledge allegedly foreclosed on said property and has attempted to take possession.

85. Defendant through the DT promised the Plaintiff that he was entitled to certain guarantees such as the right to be informed of a breach, the right to cure said breach and the right to reinstate.

86. Defendant did not abide by those promises which the Plaintiff relied upon to his detriment and as such has been deprived of Property and property and has suffered economic damages including, but not limited to, loss of equity, economic value of the Property and emotional distress.

## VIII.

## UNJUST ENRICHMENT

87. Plaintiff incorporates paragraphs 1-86 herein as if set out verbatim

88. Defendant by its wrongful acts and omissions has been unjustly enriched at Plaintiff's expense and thus Plaintiff has been unjustly deprived.

89. By reason of the foregoing, Plaintiff seeks restitution from the Defendant and an order of this Court disgorging all profits, benefits and other compensation obtained by the Defendant for its wrongful conduct.

## IX.

## SLANDER OF TITLE

90. Plaintiff incorporates paragraphs 1-89 herein as if set out verbatim.

91. In the event that Defendant did issue a Notice of Default, it did so wrongfully and without privilege.

12

92. In the event that the Defendant possesses a Trustee's Deed, it has such wrongfully and without privilege in that the Defendant does not and has not the authority to foreclose on the property in that among other things, 1203 Second Avenue North, Nashville, Tennessee is a mailing address.

93. In the event that the Defendant has published Notice of Foreclosure Sale, it has done so wrongfully and without privilege published matters which are untrue and disparaging to Plaintiff's interest in the subject property.

94. In that the Defendant sought to possess and dispossess the Property from the Plaintiff by issuing at least three Unlawful Detainer Warrants in violation of Tennessee Law, such acts and conduct were not privileged and as such the Defendant caused the Plaintiff to suffer special damages in an amount to be proven at trial.

## X.

## CAUSE OF ACTION TO VOID AND CANCEL TRUSTEES DEED UPON SALE

95. Plaintiff incorporates paragraphs 1-94 as if set out verbatim.

96. Plaintiff would assert that there is no Trustee's Deed on file at the Register's of Deed's Office in Nashville, Tennessee.

97. Although the Defendant asserts that it is entitled to possession of the property based on the Trustee's Deed, although requested, the Plaintiff has not been provided such Deed.

98. In the event that the Defendant does possess such Trustee's Deed which is based upon the Deed of Trust, such Trustee's Deed is *void ab initio* in that such Deed was based on fraud and the foreclosure sale if any was conducted wrongfully and improperly.

13

# XI.

## WRONGUL FORECLOSURE

99. Paragraphs 1-98 are incorporated herein as if set out verbatim.

100.    Defendant allegedly foreclosed on a property with the address of 1203 Second Avenue South, Nashville, Tennessee. However, such address is a mailing address.

101.    Defendant allegedly caused to be published a Notice of Foreclosure based upon the 1203 Second Avenue North address which does not exist.

102.    Defendant allegedly foreclosed a property with the address of 1203 Second Avenue South, Nashville, Tennessee which does not exist.

103.    The Deed of Trust secures property located at 1203 Second Avenue South, Nashville, Tennessee which does not exist.

104.    The Note purports to loan money on property located at 1203 Second Avenue South, Nashville, Tennessee; however, this is only a mailing address.

105.    If the Defendant did send out notices relative to the foreclosure; they referenced a property that does not exist.

106.    If the Defendants did foreclose on the said property, that foreclosure was wrongful in that the procedure followed was in contradiction to Tennessee Foreclosure States and in breach of the Deed of Trust ¶ 10 and ¶9.

### *Wherefore Premises Considered, Plaintiff Prays:*

1.  The complaint be filed and served upon the defendant requiring it to answer within the time prescribed by law.

2.  For a declaration of rights and duties of the parties, specifically that in the event of a foreclosure sale that the sale was wrongful.

14

3. Issuance of an Order canceling the Trustee's Deed of any.

4. To vacate and set aside foreclosure sale.

5. To Quiet Title in favor the Plaintiff against the Defendant.

6. For injunctive relief, restitution, compensatory, special, general and treble damages pursuant to the Tennessee Consumer Protection Act.

7. That the Plaintiff be awarded reasonable attorney fees.

8. That the Plaintiff be awarded punitive damages.

9. That the Plaintiffs be awarded damages in the amount of $900,000 (nine hundred thousand dollars).

10. For such other general relief.

Respectfully Submitted,

Kathy A. Leslie #013587
202 Point East Drive
Nashville, Tennessee 37216
Ph.1.888.598.0009
Efax: 615.216.4802
*Counsel for Plaintiff*

15

**STATE OF TENNESSEE** )
**COUNTY OF DAVIDSON** )

    I, Samuel L. Davis, do make oath that I have read the foregoing and the information contained therein is the truth to the best of our knowledge and ability.

                                                       Samuel L. Davis

Sworn to and subscribed before me on this the 29 day of August, 2013.

                                                 Notary Public

My commission expires:_____

*(Notary seal: KATHY A. LESLIE, STATE OF TENNESSEE NOTARY PUBLIC, DAVIDSON COUNTY, My Commission Expires 03-21-2017)*

16

*Exhibit 1*

DAVIS
Loan Number 1000426535
Case Number 483-3764929-703
MIN 100052200004265352

# NOTE

SEPTEMBER 13, 2007
    [Date]

1203 2ND AVENUE SOUTH, NASHVILLE, TENNESSEE 37210
    [Property Address]

## 1.  PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means FRANKLIN AMERICAN MORTGAGE COMPANY and its successors and assigns.

## 2.  BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of ONE HUNDRED SIXTEEN THOUSAND SEVEN HUNDRED TWENTY-FIVE AND 00/100ths Dollars (U.S.$116,725.00), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of SEVEN AND ONE-HALF percent (7.500%) per year until the full amount of principal has been paid.

## 3.  PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4.  MANNER OF PAYMENT

(A) Time

Borrower shall make a payment of principal and interest to Lender on the 1ST day of each month beginning on NOVEMBER 1, 2007. Any principal and interest remaining on the 1ST day of OCTOBER, 2037, will be due on that date, which is called the maturity date.

(B) Place

Payment shall be made at 501 CORPORATE CENTRE DRIVE, SUITE 400, FRANKLIN, TENNESSEE 37067 or at such place as Lender may designate in writing by notice to Borrower.

(C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $816.16. This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box.]

☐ Graduated Payment Allonge      ☐ Other [Specify]

☐ Growing Equity Allonge

## 5.  BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6.  BORROWER'S FAILURE TO PAY

(A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR percent ( 4.00%) of the overdue amount of each payment.

(B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

GV1028-T  Page 1 of 2                                                      FHA Multistate Fixed Rate Note - 6/96

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorney's fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7.  WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
SAMUEL LEEROY DAVIS                          -Borrower

_____ (Seal)
                                             -Borrower

_____ (Seal)
                                             -Borrower


PAY TO THE ORDER OF

WITHOUT RECOURSE
FRANKLIN AMERICAN MORTGAGE COMPANY

BY:_____


GV1028-2  Page 2 of 2

FHA Multistate Fixed Rate Note - 6/96

# MORTGAGE PAYMENT LETTER

| | | | | |
|---|---|---|---|---|
| Borrowers: | **SAMUEL LEEROY DAVIS** | | | |
| Property: | 1203 2ND AVENUE SOUTH, NASHVILLE, TENNESSEE 37210 | | | |
| Loan No: | 1000426535 | | | |
| Closing Date: | 09-13-07 | Mortgage Amount: $116,725.00 | Term: | 360 (months) |

Detail of Payment:

| | | |
|---|---|---|
| Principal and Interest | $ | 816.16 |
| Hazard Insurance | $ | 80.64 |
| Property Taxes | $ | 101.73 |
| Monthly PMI/MIP | $ | 47.72 |
| Flood Insurance | $ | |
| City Taxes | $ | |
| School Taxes | $ | |
| Other | $ | |
| **TOTAL PAYMENT** | $ | 1,046.25 |

First Payment Due Date:    NOVEMBER 1, 2007

Payments to principal and interest remain constant throughout the term of the loan. Deposits for taxes and insurance are subject to change based on the last annual payment.

The undersigned have examined the above statement and find it correct, and hereby acknowledge receipt of the mortgage proceeds and authorize and consent to the disbursement of the mortgage loan proceeds for their account and benefit.

_____
SAMUEL LEEROY DAVIS

_____      _____

_____      _____

By: _____

MAIL FIRST PAYMENT ONLY TO:        FRANKLIN AMERICAN MORTGAGE COMPANY
                                     ATTN: PAYMENT PROCESSING
                                     501 CORPORATE CENTRE DRIVE, SUITE 400
                                     FRANKLIN, TENNESSEE 37067

SHORTPAY.HP                               Page 1 of 1

*Exhibit 2*

This Instrument Was Prepared By:-

FRANKLIN AMERICAN MORTGAGE COMPANY
501 CORPORATE CENTRE DRIVE, SUITE 400
FRANKLIN, TENNESSEE 37067
615-778-1000

When Recorded Mail To:

Franklin American Mortgage Company
501 Corporate Centre Drive, Suite 400
Franklin, Tennessee 37067

*certified to be a true and correct copy of the signed original.*

---

[Space Above This Line For Recording Data]

## DEED OF TRUST

DAVIS
Loan Number 1000425935
Case Number 483-3764929-703
MIN 1000522000004265352

THIS DEED OF TRUST ("Security Instrument") is made on SEPTEMBER 13, 2007. The grantor is SAMUEL LEEROY DAVIS, UNMARRIED MAN ("Borrower"). The trustee is Laura Perry , Williamson County , Tennessee ("Trustee"). The beneficiary is MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") (SOLELY AS NOMINEE FOR LENDER, AS HEREINAFTER DEFINED, AND LENDER'S SUCCESSORS AND ASSIGNS). MERS IS ORGANIZED AND EXISTING UNDER THE LAWS OF DELAWARE, AND HAS AN ADDRESS AND TELEPHONE NUMBER OF POST OFFICE BOX 2026, FLINT, MICHIGAN 48501-2026, TELEPHONE (888)679-MERS. FRANKLIN AMERICAN MORTGAGE COMPANY, a corporation organized and existing under the laws of TENNESSEE, and whose address is 501 CORPORATE CENTRE DRIVE, SUITE 400, FRANKLIN, TENNESSEE 37067 ("Lender"). Borrower owes Lender the principal sum of ONE HUNDRED SIXTEEN THOUSAND SEVEN HUNDRED TWENTY-FIVE AND 00/100ths Dollars (U.S.$116,725.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on OCTOBER 1, 2037. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property located in DAVIDSON County, Tennessee:

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.

Maximum principal indebtedness for Tennessee recording tax purposes is $    116,725.00
The source of Grantor's equitable interest is Deed recorded at Book _____, Page _____, in the Register's Office of DAVIDSON County.
which has the address of   1203 2ND AVENUE SOUTH _____,   NASHVILLE
                                          [Street]                                                    [City]
Tennessee    37210         ("Property Address");
              [Zip Code]

GV2041-1 (696)  Page 1 of 7                                        FHA Tennessee Deed of Trust

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which

GV2041-2 (6/96) Page 2 of 7                                                              FHA Tennessee Deed of Trust

Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

GV2041-3 (696)  Page 3 of 7                                                    FHA Tennessee Deed of Trust

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8.** Fees. Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

GV2041-4 (696)  Page 4 of 7

FHA Tennessee Deed of Trust

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for, payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this Paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

GV2041-5 (695) Page 5 of 7                                                                    FHA Tennessee Deed of Trust

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under Paragraph 9, Lender may invoke the power of sale and any other remedies permitted by law. Lender shall be entitled to collect all fees incurred in pursuing the remedies provided in this Paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Trustee shall give notice of sale by public advertisement in the county in which the Property is located for the time and in the manner provided by applicable law, and Lender or Trustee shall mail a copy of the notice of sale to Borrower in the manner provided in Paragraph 13. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and under the terms designated in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. If the Property is sold pursuant to this Paragraph 18, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at sale. If possession is not surrendered, Borrower or such person shall be a tenant at will of the purchaser and hereby agrees to pay the purchaser the reasonable rental value of the Property after sale.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower.

20. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

21. **Waivers.** Borrower waives all right of homestead, equity of redemption, statutory right of redemption and relinquishes all other rights and exemptions of every kind, including, but not limited to, a statutory right to an elective share in the Property.

GV2041-6 (696) Page 6 of 7                                                                                              FHA Tennessee Deed of Trust

**22. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

☐ Condominium Rider                            ☐ Growing Equity Rider

☐ Planned Unit Development Rider               ☐ Graduated Payment Rider

☐ Other(s)
   [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it. IN WITNESS WHEREOF, Borrower has executed this Security Instrument.

Witnesses:

_____        _____ (Seal)
                                          SAMUEL LEEROY DAVIS          -Borrower

_____        _____ (Seal)
                                                                       -Borrower

_____ (Seal)  _____ (Seal)
                                -Borrower                              -Borrower

STATE OF TENNESSEE,                                      County ss: Williamson

On this 13 day of Sept              20 07, before me personally appeared SAMUEL
LEEROY DAVIS   to me known to be the person(s) described in and who executed the foregoing instrument, and
acknowledged that              executed the same as              free act and deed.

My Commission Expires: 12/09/7

                                         Notary Public

                                         [Notary Seal: LAURA D. PERRY, STATE OF TENNESSEE, NOTARY PUBLIC, WILLIAMSON COUNTY]

GV2041-7 (696) Page 7 of 7

                                                           FHA Tennessee Deed of Trust

## Exhibit "A"

LAND in Davidson County, Tennessee, being part of Lot No. 21 on the Plan of John Nelson's Addition, as of Record in Book 2, page 182, Register's Office for said County, described as follows:

BEGINNING at the southwest corner of 2nd Avenue South, formerly Market Street, and Chestnut, formerly Franklin, Street; thence with the westerly margin of 2nd Avenue South, southwardly 62 feet, more or less, to the northeast corner of the property conveyed to M.E. Bryant by deed from S.C. Rawls of record in Book 139, page 311, said Register's Office; thence with said Bryant's northerly line, westwardly 125 feet, more or less, to the easterly margin of an alley; thence with said alley, northwardly 62 feet, more or less, to the southerly margin of Chestnut Street; thence with said street, eastwardly 125 feet, mor or less, to the beginning.

Being the same property conveyed to Samuel Leeroy Davis by deed from Samuel W. Davis, also known as Samuel Leeroy Davis, beneficiary and executor in the Last Will and Testament of Roy Samuel Davis of record in Instrument 20030620012163 on 08/20/2003 and filed for record on 08/20/2003, Register's Office for said County.

(L-AHM-07-1203.PFD/L-AHM-07-1203/21)

This Instrument Was Prepared By:

FRANKLIN AMERICAN MORTGAGE COMPANY
501 CORPORATE CENTRE DRIVE, SUITE 400
FRANKLIN, TENNESSEE 37067
615-778-1000

When Recorded Mail To:

Franklin American Mortgage Company
501 Corporate Centre Drive, Suite 400
Franklin, Tennessee 37067

certified to be a true
and correct copy of
the signed original.

[Space Above This Line For Recording Data]

# DEED OF TRUST

DAVIS
Loan Number 1000426535
Case Number 483-3764929-703
MIN 10005220000426352

THIS DEED OF TRUST ("Security Instrument") is made on SEPTEMBER 13, 2007. The grantor is SAMUEL LEEROY DAVIS, UNMARRIED MAN ("Borrower"). The trustee is Laura Perry , Williamson County , Tennessee ("Trustee"). The beneficiary is MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") (SOLELY AS NOMINEE FOR LENDER, AS HEREINAFTER DEFINED, AND LENDER'S SUCCESSORS AND ASSIGNS). MERS IS ORGANIZED AND EXISTING UNDER THE LAWS OF DELAWARE, AND HAS AN ADDRESS AND TELEPHONE NUMBER OF POST OFFICE BOX 2026, FLINT, MICHIGAN 48501-2026, TELEPHONE (888)679-MERS. FRANKLIN AMERICAN MORTGAGE COMPANY, a corporation organized and existing under the laws of TENNESSEE, and whose address is 501 CORPORATE CENTRE DRIVE, SUITE 400, FRANKLIN, TENNESSEE 37067 ("Lender"). Borrower owes Lender the principal sum of ONE HUNDRED SIXTEEN THOUSAND SEVEN HUNDRED TWENTY-FIVE AND 00/100ths Dollars (U.S.$116,725.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on OCTOBER 1, 2037. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property located in DAVIDSON County, Tennessee:

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.

Maximum principal indebtedness for Tennessee recording tax purposes is $ 116,725.00
The source of Grantor's equitable interest is Deed recorded at Book _____ , Page _____ , in the Register's Office of DAVIDSON County.
which has the address of   1203 2ND AVENUE SOUTH                          NASHVILLE
                                                                    [Street]                                      [City]
Tennessee   37210                ("Property Address");
              [Zip Code]

GV2041-1 (596)  Page 1 of 7

FHA Tennessee Deed of Trust

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which

GV2041-2 (696)  Page 2 of 7

FHA Tennessee Deed of Trust

Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

GV2042-3 (696)  Page 3 of 7                                                        FHA Tennessee Deed of Trust

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

GV2041-4 (696) Page 4 of 7                     FHA Tennessee Deed of Trust

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this Paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

GV2041-5 (6/96) Page 5 of 7                                              FHA Tennessee Deed of Trust

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under Paragraph 9, Lender may invoke the power of sale and any other remedies permitted by law. Lender shall be entitled to collect all fees incurred in pursuing the remedies provided in this Paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Trustee shall give notice of sale by public advertisement in the county in which the Property is located for the time and in the manner provided by applicable law, and Lender or Trustee shall mail a copy of the notice of sale to Borrower in the manner provided in Paragraph 13. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and under the terms designated in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. If the Property is sold pursuant to this Paragraph 18, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at sale. If possession is not surrendered, Borrower or such person shall be a tenant at will of the purchaser and hereby agrees to pay the purchaser the reasonable rental value of the Property after sale.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower.

**20. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**21. Waivers.** Borrower waives all right of homestead, equity of redemption, statutory right of redemption and relinquishes all other rights and exemptions of every kind, including, but not limited to, a statutory right to an elective share in the Property.

GV2041-6 (696)  Page 6 of 7

FHA Tennessee Deed of Trust

**22. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

☐ Condominium Rider                    ☐ Growing Equity Rider

☐ Planned Unit Development Rider       ☐ Graduated Payment Rider

☐ Other(s)
   [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it. IN WITNESS WHEREOF, Borrower has executed this Security Instrument.
Witnesses:

_____     _____ (Seal)
                            SAMUEL LEEROY DAVIS           -Borrower

_____     _____ (Seal)
                                                          -Borrower

_____(Seal) _____ (Seal)
                    -Borrower                              -Borrower

STATE OF TENNESSEE,                               County ss: Williamson

On this 13 day of Sept 20 07, before me personally appeared SAMUEL LEEROY DAVIS to me known to be the person(s) described in and who executed the foregoing instrument, and acknowledged that executed the same as free act and deed.

My Commission Expires: 12/09/07

                            Notary Public

GV2041-7 (696) Page 7 of 7

                            FHA Tennessee Deed of Trust

## Exhibit "A"

LAND in Davidson County, Tennessee, being part of Lot No. 21 on the Plan of John Nelson's Addition, as of Record in Book 2, page 182, Register's Office for said County, described as follows:

BEGINNING at the southwest corner of 2nd Avenue South, formerly Market Street, and Chestnut, formerly Franklin, Street; thence with the westerly margin of 2nd Avenue South, southwardly 62 feet, more or less, to the northeast corner of the property conveyed to M.E. Bryant by deed from S.C. Rawls of record in Book 139, page 311, said Register's Office; thence with said Bryant's northerly line, westwardly 125 feet, more or less, to the easterly margin of an alley; thence with said alley, northwardly 62 feet, more or less, to the southerly margin of Chestnut Street; thence with said street, eastwardly 125 feet, mor or less, to the beginning.

Being the same property conveyed to Samuel Leeroy Davis by deed from Samuel W. Davis, also known as Samuel Leeroy Davis, beneficiary and executor in the Last Will and Testament of Roy Samuel Davis of record in Instrument 20030820012163 on 08/20/2003 and filed for record on 08/20/2003, Register's Office for said County.

(L-AHM-07-1203.PFD/L-AHM-07-1203/21)

*Exhibit 3*

BILL GARRETT, Davidson County
Trans:T2012003201l APTSUBTR
Recvd: 05/02/12 09:53   2 pgs
Fees:12.00 Taxes:0.00

20120502-0037453

THIS INSTRUMENT PREPARED BY & RETURN TO:
Patrick A. Taggart, Esq.
McCurdy & Candler, LLC
Six Piedmont Center, Suite 700
3525 Piedmont Road, NE
Atlanta, GA 30305

Lender Loan #:1843762598
File No. 11-23731

## NOTICE OF APPOINTMENT OF SUBSTITUTE TRUSTEE

Tennessee, Davidson County

      **WHEREAS** Samuel L. Davis, executed a Deed of Trust on September 13, 2007 to Laura Perry, Trustee, to secure a Promissory Note in the amount of $116,725.00, payable to the order of Franklin American Mortgage Company, all as fully set forth in said Deed of Trust which is of record in the Register's Office of Davidson County, Tennessee, in Instrument No. 20070926-0114846, to which reference is hereby made; and

      **WHEREAS**, said Deed of Trust expressly provides that the holder of the Promissory Note is empowered to replace the Trustee therein named and appoint a successor trustee by the execution of an instrument to that effect and by filing same in the Register's Office of the County in which the property is situated; and

      **WHEREAS**, the undersigned, JPMORGAN CHASE BANK, N.A., declares itself to be the holder of said Promissory Note so secured by said Deed of Trust.

      **NOW, THEREFORE**, JPMORGAN CHASE BANK, N.A., exercising their authority as such holder, does, by these presents, nominate and appoint MCC TN, LLC as Substitute Trustee, effective December 30, 2011.

      Beneficiary has appointed the substitute trustee prior to the first notice of publication as required by T.C.A. § 35-5-101 and ratifies and confirms all actions taken by the substitute trustee subsequent to the date of the substitution and prior to the recording of this substitution.

      Should the undersigned become the last and highest bidder at the foreclosure sale, the Substitute Trustee is hereby authorized to transfer and assign said bid and to convey title to said foreclosure property to whomsoever the undersigned shall authorize. The statement in the Substitute Trustee's deed that the undersigned has requested transfer of its bid to grantee(s) in the Substitute Trustee's deed shall be binding on the undersigned and conclusive evidence in favor of the assignee or other parties thereto, that the Substitute Trustee was duly authorized and empowered to execute same.

File No. 11-20731/Loan No. 1843762698

IN WITNESS WHEREOF, the undersigned, JPMorgan Chase Bank, N.A., has caused this instrument to be executed by its duly authorized officer and agent on _April 24_, 2012

JPMorgan Chase Bank, N.A.

BY: _C.S. Turner_

TITLE: **Vice President**

STATE OF     **Ohio**
COUNTY OF    **Franklin**

Before me, a Notary Public in and for said State and County, duly commissioned and qualified, personally appeared _C.S. Turner_, with whom I am personally acquainted (or proved on the basis of satisfactory evidence to be the person), and who, upon his or her oath, acknowledged himself or herself to be the **Vice President** of JPMorgan Chase Bank, N.A., the within named bargainor, and as such officer being duly authorized so to do, executed the foregoing instrument for the purposed therein contained by subscribing thereto the name of the corporation by himself or herself as such officer.

WITNESS my hand and Notarial Seal at office on _04-24_, 2012

_Rachel L Echard_
NOTARY PUBLIC

My Commission Expires:
_02-16-2016_

RACHEL L. ECHARD
Notary Public, State of Ohio
My Commission Expires
02-16-2016

User: WGARRETT1   Print Date: 8/9/2013 3:10:27 PM   Instr. No: 201205020037453   Page No: 2 of 2



# DAVIDSON COUNTY
# SHERIFF'S OFFICE   *Collective Exhibit 4*

Daron Hall, Sheriff

Civil Warrant Division
710 S. Fifth St.
Nashville, TN 37206

Telephone: 615-862-8174
Fax: 615-862-8281

# NOTICE

TO OCCUPANT    *All occupants* :

It is the order of the Court that you be removed from these premises, namely:

*1203 2nd Ave South*

Street                  Apartment Number

**THIS IS NOTICE THAT YOU MUST VACATE THE ABOVE-NAMED PREMISES.**

Please make arrangements to obey the court's order so that involuntary eviction will not be required.

Thank you for your cooperation.

T. BOGLE

Deputy Sheriff

*8/26/13*

Date

Accountability • Diversity • Integrity • Professionalism